## STANDARD SILK CO. v. FORCE.

(Circuit Court of Appeals, Second Circuit. April 13, 1909.)

No. 197.

MASTER AND SERVANT (§§ 286, 288, 289*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—ACTIONS—QUESTIONS FOR JURY.

Where plaintiff, an inexperienced boy 14 years old, employed in defendant's silk mill, was left during the noon hour alone in a room where shafting from which belts hung was running at high speed, without any warning or caution against the danger of meddling with the same, and in some manner become caught in a belt and injured, on conflicting evidence as to the manner of the injury, the questions of the defendant's negligence, and also of plaintiff's contributory negligence and assumption of risk, were properly submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1010–1050, 1068–1132; Dec. Dig. §§ 286, 288, 289.*]

In Error to the Circuit Court of the United States for the Northern District of New York.

For opinion below, see 160 Fed. 992.

This cause comes here upon a writ of error to review a judgment of the Circuit Court, Northern District of New York, entered upon verdict in favor of defendant in error, who was plaintiff. The action is for personal injuries sustained in defendant's silk mill.

White, Bond & Schoeneck (E. Schoeneck, of counsel), for the plaintiff in error.

J. J. Bixby, for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The accident happened in the reeling room, in which there were eight machines; four of them not being in commission on the day the plaintiff was hurt. These machines were driven each by a belt which ran from a pulley on an overhead power shaft to a pulley on the driving shaft of the machine. The power shafts ran during the hour of noon recess; but it was the practice for the operators at the machines to cease work on signal given a few minutes before noon, whereupon a foreman or assistant foreman would stop the running of the machines by pushing the belts off the pulleys of the power shafts. The belts would then hang loose on the revolving shaft, reaching to the floor. Each belt was then tied or looped up so as to clear the floor. Whether or not this was always done was a fact in controversy on the testimony; plaintiff asserting that in the few weeks he had been there he had repeatedly seen belts reaching to and resting in part on the floor, adding:

"There was sufficient motion from the shaft so that the end of the belt that came in contact with the floor would wriggle."

There was also a conflict between competent witnesses called by both sides as to whether a looped-up belt suspended on a rapidly moving shaft would or would not "crawl" and sometimes wind up on the shaft. The jury was justified in finding that such an occurrence might reasonably be expected occasionally to happen. Evidence submitted by the defendant indicated that after being tied up the lower loop of the belt was slipped over the shaft of the machine (inside the pulley)—presumably to counteract the tendency to wind up. But if the jury believed plaintiff this was not always done.

Plaintiff was 14 years of age. He was employed to clean bobbins, using sandpaper to remove filaments of silk from them. He was not put to work at any machine. Usually, if not invariably, all the others employed in the reeling room left it during the noon recess; but he remained there, eating the lunch he had brought with him. This is not disputed. Two fellow employés testified, each to a different occasion when he casually cautioned plaintiff not to touch the belts. The plaintiff, however, said that no one ever warned him they were dangerous, and it seems well established by the proof that no one in authority ever cautioned him as to the dangers incident to belts or machines, or forbade him to interfere with them, or warned him against coming in contact with them. The plaintiff testified that on at least one occasion before the day of the accident, under the direction of the

foreman, he "put off three or four belts" from the main pulleys overhead. The foreman contradicted him on this point.

At the time of the accident plaintiff was alone in the room. His story of what took place is as follows: He sat in one of the windows about to eat his dinner, when his attention was attracted by a noise, which he saw was caused by a hanging belt which had wound up on the shaft and was revolving very fast; the end of it striking the ceiling every time the shaft went around. He took a step-ladder which was kept in the room, apparently for use when putting belts on, and set it up near the machine to which the belt belonged. He took four or five steps up the ladder and reached out his hand to the revolving belt. The hand was caught in the mass, he was whirled up and around, his arm torn off, and he fell to the floor. The defendant's theory of the occurrence is that the belt was properly tied up, with the lower loop caught over the shaft of the machine, not crawling or winding up at all; but that plaintiff through idle curiosity mounted the step-ladder to experiment with the belt and see if he could slip it on and off the power shaft pulley as he had seen the foreman and assistant foreman do. This theory is based on circumstances—the position of the belt when found, etc.—of the value of which the jury were competent to judge. It is but a theory, since the plaintiff was the sole eyewitness of the transaction.

At the close of the case defendant moved for the direction of a verdict on the grounds that: (1) No negligence of defendant was shown. (2) Plaintiff was guilty of contributory negligence. (3) The risk he took was an open and obvious one, which he assumed by remaining in the employ. (4) The negligence, if any, was that of a coemployé.

Upon the facts above set forth the questions of contributory negligence and assumption of risk were fairly for the jury, especially so in the case of an infant, where the degree of his intelligence and maturity, important elements of the problem, could be best determined by the triers of the facts, who saw and heard him on the witness stand. The view we take of the case makes it unnecessary to consider the fourth ground.

As to the negligence of defendant: There was enough to take the case to the jury on the theory that he had been put to work throwing off belts by his superior, the foreman; but that was not the only question submitted to them by the court. Whether plaintiff tried to reach the belt in some honest effort to be useful to his employer, or whether with the ignorance and inexperience of childhood he was attracted by what he saw and tempted to do as others had done, the salient and dominant fact remains that he was placed alone in this room, where moving parts running at high speed were likely to imperil an inexperienced person who came in contact with them, and was not warned by those who placed him there of his dangerous surroundings. In his decision on the motion for a new trial the trial judge says:

"I can conceive of no more vicious doctrine than to hold that owners of mills, in which are machinery and belts such as these were, dangerous to those who should intermeddle with them unless skilled in the business, may employ inexperienced boys and put them to work in the rooms with this machinery, and leave them there at noon with parts of it in motion and the rest

unguarded and easily accessible, without warning or instruction as to the danger of intermeddling with it, or without positive instructions to keep away from it and not intermeddle, without being liable to the imputation of negligence in so doing."

In this conclusion we fully concur.

Defendant reserved exceptions to the refusal of several of his requests to charge, which fully set forth his theory of the case. They need not be separately discussed. They were based on the proposition that unless actually put to work at a machine there was no obligation on the part of the employer to warn the servant of the danger of intermeddling with it—a proposition to which we do not assent. We find no errors in the admitting or excluding testimony or in the charge.

Judgment affirmed.